<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

_____

DAVID RIGGS,                                    :
                                                :
                                                :
              Plaintiff,          :          **Civil Action No.  03-2246 (JAG)**
                                                :
              v.                  :
                                                :
CORRECTIONAL MEDICAL SERVICES, :                    **OPINION**
GLENN FERGUSON, GRACE ROGERS,  :
ANGEL SANTIAGO, BHARATKUMAR    :
PATEL, JOHN AND JANE DOES 1-20, :
                                                :
              Defendants.         :
_____:

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before the Court on the motion for summary judgment of Defendants Grace Rogers and Angel Santiago ("Defendant Rogers" and "Defendant Santiago"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Defendant argues that Plaintiff's complaint should be dismissed with prejudice because Plaintiff is unable to maintain a cause of action as to Defendant Rogers, pursuant to Section 1983, and because Plaintiff's complaint fails to state a colorable claim alleging that Defendants acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.[1]

_____

[1] The appropriate relief on a motion for summary judgment is merely the grant or denial of the motion, not the dismissal, with or without prejudice, of the complaint.  FED. R. CIV. P. 56; <u>Cheminor Drugs, Ltd. v. Ethyl Corp.</u>, 168 F.3d 119, 121 n.2 (3d Cir. 1999).

**Background**

In 1988, David Riggs ("Plaintiff" or "Riggs") was convicted of criminal attempt

aggravated sexual assault, burglary, and possession of a weapon.  (Affidavit of Angel Santiago

("Santiago Aff.") Ex. A.)  Prior to his release date, Plaintiff was evaluated, and on February 15,

2000, he was deemed a sexually violent predator and was civilly and involuntarily committed to

the Special Treatment Unit ("STU" or "Unit") in Kearny, New Jersey, pursuant to the New

Jersey Sexually Violent Predator Act ("SVPA").  N.J. STAT. ANN. § 30:4-27.24 et seq.  (Santiago

Aff. Ex. A.)  The SVPA allows involuntary commitment of those deemed  "individuals who

commit sex offenses, suffer from mental abnormalities or personality disorders which make them

likely to engage in repeat acts of predatory sexual violence if not treated for their mental

conditions."  N.J. STAT. ANN. § 30:4-27.25(a).  The Department of Corrections ("DOC") is

responsible for the custody, care, and treatment of committed individuals.  N.J. STAT. ANN. §

30:4-27.34(a).  Defendants Rogers and Santiago were the Administrator and Assistant

Superintendent of the Adult Diagnostic and Treatment Center of the STU, respectively, at the

time Plaintiff was committed to the Unit.  (Affadavit of Grace Rogers ("Rogers Aff.") ¶ 1;

Santiago Aff. ¶ 1.)

The DOC has entered into an agreement with Correctional Medical Services ("CMS"), a

private contract vendor, whereby CMS provides medical services for STU residents.  (Santiago

Aff. ¶ 5.)

In August 2001, Plaintiff was seen by Dr. Bharatkumar Patel, a CMS physician.

(Complaint ("Compl."), ¶ 5.)    Plaintiff alleges that he complained to Dr. Patel of chest pains

and symptoms related to coronary artery disease.  (Id.)  Sometime thereafter, Plaintiff contends

that Dr. Patel scheduled a cardiac consultation with Dr. Jeferi of Hamilton Specialists.  In

October 2001, Plaintiff visited Dr. Jeferi, who ordered a cardiac stress test and cardiac

catherterization.  (Id.)  Plaintiff received a cardiac stress test in December of 2001.  (Brief and

Appendix on Behalf of State Defs. ("Defs.' App.," Ex. D.).)

On March 14, 2002, Joan D. Van Pelt, Plaintiff's court appointed counsel, wrote to

Defendant Santiago, inquiring about the DOC's delay in providing the cardiac catheterization

that Dr. Jeferi had ordered, and requesting that the DOC schedule the procedure immediately.

(Compl. ¶ 5; Santiago Aff. Ex. C, (explaining, "[i]t is now almost 6 months later and the

procedure has not been scheduled.  It is my understanding that [the DOC] is responsible for

providing medical care to the STU residents.").)  (Id.)  In May 2002, Plaintiff alleges that he

asked Defendant Santiago to inform him as to when the cardiac catheterization would be

ordered.[2]

On August 7, 2002, Plaintiff submitted a written grievance, alleging that Defendant

Santiago ignored his repeated requests to schedule a cardiac catheterization in compliance with

Dr. Jeferi's order.  (Defs.' App., Ex. C.)  Plaintiff's written grievance states that it contained

enclosures including a copy of the letter from Ms. Van Pelt and  Dr. Jeferi's order.  (Id.)

Plaintiff's grievance notes that CMS reported no knowledge of Dr. Jeferi's order.  (Id.)  The

grievance form further indicates that it was forwarded to DOC on August 9, 2002.  (Id.)

Defendants contend that the form was forwarded "to medical" in September 2002.  (Id.)

---

[2] Defendants Santiago and Rogers neither dispute nor address the events from April 2001
to May 2002 described in this paragraph in their motion for summary judgment or reply brief.

The Residents' Guide to the STU, which each resident receives upon arrival, states, "[a]ll responses to grievances will be made to the resident within 30 days, and the responses will be in writing. If the grievance is not resolved to the satisfaction of the resident, the grievance can be forwarded to Unit's Clinical Director, or Administrator for final resolution of the complaint." (Defs.' App., Ex. B.)

St. Francis Medical Center in Trenton, New Jersey admitted Plaintiff for a cardiac catheterization on November 19, 2002. (Defs.' App., Ex. D) The procedure revealed irregularities with eighty to ninety percent stenosis. (Id.) Due to Plaintiff's heart condition, Dr. Jay K. Patel performed an angioplasty with placement of two stents. St. Francis Medical Center discharged Plaintiff on November 22, 2002. (Id.)

### Legal Standards

**A.      Dispositive Motion**

This matter is before this Court on Defendants Grace Rogers and Angel Santiago's motion for summary judgment, pursuant to FED. R. CIV. P. 56. Plaintiff argues that the parties have not yet conducted preliminary discovery and thus, urges this Court to apply the standard under Rule 12(b)(6).[3]

---

[3] Plaintiff alleges that he has served Defendants Rogers and Santiago with written interrogatories that remain unanswered. Further, Plaintiff alleges that he has requested, but Defendants have not provided, Rule 26 disclosures. Of course, the proper procedural device to voice this manner of objection to a summary judgment motion is a FED. R. CIV. P. 56(f) motion. The essence of Rule 56(f) is a  request by the non-moving party imploring the Court not to address a 56(c) motion on its merits until discovery is complete giving all parties the opportunity to discern whether any genuine issues as to material facts exist such that summary judgment for the movant is inappropriate. Although not framed as a Rule 56(f) motion, Plaintiff has articulated, albeit inartfully, such a motion. This Court shall grant Plaintiff's request. Rule 56(f) provides a separate and independent basis for denial of defendants' Rule 56(c) motion.

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.   See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.   See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.   Scheuer v. Rhodes, 416 U.S. 232, 236 (1974);  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.   Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357).

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In making this determination, the Court must draw all reasonable inferences in favor of the non-

movant.  Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994);

Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1581 (3d Cir. 1992).

Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists.   Jersey Cent. Power & Light Co. v.

Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for

summary judgment cannot rest on mere allegations and instead must present actual evidence that

creates a genuine issue as to a material fact for trial.   Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir.

1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary

judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

If the nonmoving party has failed "to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof

at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex,

477 U.S. at 322-23).  In determining whether there are any issues of material fact, the Court must

resolve all doubts as to the existence of a material fact against the moving party and draw all

reasonable inferences – including on issues of credibility – in favor of the non-moving party.

Watts v. Univ. of Del., 622 F.2d 47, 50 (3d Cir. 1980).

In the instant motion, this Court recognizes that there are materials presented beyond the

pleadings.  Pursuant to FED. R. CIV. P. 12(b),

6

> [i]f, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

Should this Court choose to accept materials beyond the pleadings, this Court is then required to convert the motion to one for summary judgment and provide the parties notice and a reasonable opportunity to present all relevant material.  See, e.g., In re Rockefeller Center Properties, Inc., 184 F.3d 280, 287-289 (3d Cir. 1999);  Rose v. Bartle, 871 F.2d 331, 339-343 (3d Cir. 1989).  This Court notes that it has complete discretion to accept material beyond the pleadings.  Morse v. Lower Merion School Dist., 132 F.3d 902, 905 n.3 (3d Cir. 1997); Wright & Miller,  Fed. Practice and Procedure: Civil 2d § 1366.

The parties have presented documents outside the pleadings to this Court, including the affidavit of Grace Rogers, the affidavit of Angel Santiago, and corresponding exhibits.  (Rogers Aff.; Santiago Aff. Ex. A-D.)  This Court does not exclude these submissions, but rather considers them in resolving the instant motion.  Plaintiff has had reasonable notice and opportunity to present all material outside the pleadings made pertinent by the motion.  Therefore, in light of this Court's determination to consider materials outside of the pleadings, and as directed by FED. R. CIV. P. 12(b), this Court applies Rule 56 to resolve the instant motion.

**B.     Violation of Due Process Claim**

The parties dispute the appropriate constitutional standard that this Court should apply to Plaintiff's claim.  Plaintiff's complaint alleges Defendants acted with deliberate indifference to his medical needs and denied him access to treatment for a serious medical illness in violation of

the Eighth Amendment.  Defendants recognize that Plaintiff is not a prison inmate. Defendants

posit that Plaintiff is involuntarily committed to the STU.  (Santiago Aff. ¶ 2 .)  Therefore,

Defendants contend, Plaintiff's claim of deliberate indifference to his medical needs must be

examined under the Fourteenth Amendment.

### 1.      Claim under Section 1983

Section 1983 subjects to liability "[e]very person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory. . . subjects . . . any citizen of

the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws."  42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method

for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271

(1994) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  "The first step in any [§ 1983]

claim is to identify the specific constitutional right allegedly infringed." Albright, 510 U.S. at 271

(citing Graham v. Connor, 490 U.S. 386, 394 (1989), and Baker, 443 U.S. at 140).  To establish a

viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was

committed by a person acting under the color of state law" and that the "conduct deprived the

plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United

States." Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (quoting Parratt v. Taylor, 451

U.S. 527, 535 (1981) overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327

(1986)).

**2. Appropriate Constitutional Standard**

Following his convictions for criminal attempt aggravated sexual assault, burglary, and possession of a weapon, Plaintiff was incarcerated.  Individuals committed under the SVPA are not being punished, as the legislature intended the  SVPA to be regulatory rather than punitive in nature.  See State v. Bellamy, 178 N.J. 127, 138 (N.J. 2003).  Persons committed under the SVPA remain confined "because of the nature of the mental conditions from which [they] suffer and the danger they present . . . . "  SVPA § 30:4-27.2(d).  Though Plaintiff is not incarcerated for the purpose of completing a fixed, imposed sentence, "[p]ersons committed to Kearny are housed in locked rooms and monitored by uniformed correctional officers, some carrying weapons, who are employed by the Department of Corrections.  Residents leaving the facility are shackled with handcuffs to waist chains and also with ankle cuffs.  There are no opportunities at Kearny to advance to a less restrictive physical structure."  In re commitments of M.G. and D.C., 751 A.2d 1101, 1105 (N.J. Super. App. Div. 2000).

 Plaintiff is no longer incarcerated for having committed a criminal offense; rather, he is involuntarily committed, pursuant to the SVPA.  In Natale v. Camden County Correctional Facility, 318 F.3d 575 (3d Cir. 2003),  the Third Circuit held that, when considering pre-detainees' claims, pursuant to Section 1983, for deliberate indifference application of the Fourteenth Amendment is clearly appropriate.  The Court found that because the plaintiff was not committed as a prisoner, the Eighth Amendment did not directly apply.  "In this context, the Natales should have pleaded their § 1983 claim as one based on the Due Process Clause of the Fourteenth Amendment."  Id.  However, the Court noted that, when evaluating deliberate

indifference under the Fourteenth Amendment, the Third Circuit has found no reason to apply a different standard than that pertaining to deliberate indifference claims brought under the Eighth Amendment.  See also Woloszyn v. County of Lawrence, et al., 396 F.3d 314 (3d Cir. 2005) (explaining that in the context of a pre-trial detainee's § 1983 claim, deliberate indifference under the Eighth Amendment does not directly control, but the Court may nevertheless look to Eighth Amendment, because the rights of pre-trial detainees are at least as great as those rights of the convicted); Hubbard v. Stanley Taylor, et al.,  399 F.3d 150 (3d Cir. 2005) (evaluating a pre-trial detainee's Fourteenth Amendment inadequate medical care claim under the standard used in similar claims brought under the Eighth Amendment).[4]

Pursuant to Third Circuit precedent, this Court directly applies the Fourteenth Amendment because Plaintiff was not incarcerated at the time of the events giving rise to the acts or omissions underlying this complaint.  The standard for considering due process claims of deliberate indifference under the Eighth Amendment are appropriate for consideration by analogy.

---

[4] While residents of the STU and other similarly situated individuals in other states are more akin to those involuntarily committed, such as those with severe mental impairments, "[s]ome punishments, though not labeled 'criminal' by the State, may be sufficiently analogous to criminal punishments in the circumstances in which they are administered to justify application of the Eighth Amendment.  Ingraham v. Wright, 430 U.S. 651, 668 n.37 (1977).  This Court need not determine whether the instant case presents such a circumstance.

**Analysis**

### I.      Seriousness

Plaintiff's complaint alleges that Defendants Rogers and Santiago are liable under Section 1983 and the Fourteenth Amendment for acting with deliberate indifference to Plaintiff's serious medical needs.  (Compl. ¶ 5.)

Defendants state, in conclusory fashion, "plaintiff has not demonstrated that any of his alleged medical needs were serious enough to satisfy the first prong of the Fourteenth Amendment inquiry."  (Def.'s Br. at 14-18.)

To state a claim for deliberate indifference as to a serious medical need in violation of the due process guarantees under the Fourteenth Amendment, Plaintiff must show that his medical needs are serious.  See Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  A serious medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Id. at 347  (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981).  Further, serious medical needs are those which would result in permanent loss or handicap in the absence of medical treatment. Id.

Plaintiff alleges that he began complaining to Dr. Bharatkumar Patel of chest pains and symptoms related to coronary artery disease in August 2001.  (Compl.¶ 5.)   Sometime thereafter, Dr. Patel scheduled a cardiac consultation with Dr. Jeferi of Hamilton Specialists.  In October  2001, Plaintiff visited Dr. Jeferi, who ordered a cardiac stress test and cardiac

catheterization.  (Compl. ¶ 5.)  Plaintiff received a cardiac stress test in December 2001, but did

not receive the catheterization at that time.  (Defs.' App., Ex. D.)

       On March 14, 2002, Joan D. Van Pelt, Plaintiff's court appointed counsel, sent a letter to

Defendant Santiago requesting an investigation into the delay in implementing Dr. Jeferi's

instructions that Plaintiff receive a cardiac catheterization.  (Santiago Aff., Ex. C.)  The record

does not indicate any response to Van Pelt's letter.  In May 2002, Plaintiff claims that he spoke to

Santiago about the status of Dr. Jeferi's order for a cardiac catheterization.  On August 7, 2002,

Plaintiff submitted a grievance against Santiago relating to the delay of his catheterization.

("Def.'s App.," Ex. C.)  Plaintiff underwent the cardiac catheterization on November 19, 2002,

thirteen months after his alleged initial complaint.  (Defs.' App., Ex. D.)

       Defendant fails to provide this Court with even a scintilla of evidence supporting the

proposition that the heart condition about which Plaintiff complained and was diagnosed does

not present a serious illness.  Further, the nature of the procedure itself could serve as tangible

evidence from which a reasonable trier of fact could conclude that Plaintiff's condition was

serious.  Drawing inferences in favor of the non-movant, as is required pursuant to Rule 56, this

Court concludes that genuine issues of material fact remain as to whether Plaintiff's heart

condition presents a serious illness.

## II.    Deliberate Indifference

       In addition to determining that the complained of condition constituted a serious medical

illness, this Court must determine whether Defendants acted with deliberate indifference to that

condition in violation of Plaintiff's Fourteenth Amendment rights to life, liberty, and due

process.  Defendant Santiago was the former Assistant Administrator at the STU, and Defendant Rogers was the Administrator at the time the actions alleged to constitute deliberate indifference in Plaintiff's Complaint took place.  Defendants argue that Defendant Rogers may not be held liable because (1) Plaintiff alleges no facts in his complaint that state a claim of deliberate indifference by Defendant Rogers, and (2) a theory of liability based on Roger's supervisory status, such as a theory of respondeat superior, is not colorable in a § 1983 claim. (Defs.' Mot. in Supp. of Summ. J. at 7, 8.)  Defendants urge that because no reasonable jury could find that either defendant acted with deliberate indifference, this Court should grant summary judgment in their favor.

### A.    Theories of Liability Under Section 1983

Defendants argue that Plaintiff does not allege that he contacted Rogers directly, and therefore Rogers cannot have acted with deliberate indifference as a matter of law.  In addition, Defendants argue that because a theory of respondeat superior may not be sustained  under a § 1983 claim, Plaintiff's complaint fails to state a cause for which relief may be granted.

Defendants' arguments are to no avail for two reasons.  First, knowledge of medical need and delay for non-medical reasons are sufficient to support a finding of deliberate indifference. See Hathaway v. Coughlin, 841 F.2d 48, 66 (2d Cir. 1988) (holding that plaintiff's allegations of a two year delay in arranging necessary surgery were sufficient to survive summary judgment, as they created a factual dispute as to whether defendants acted with deliberate indifference).  The Residents' Guide to the STU, which each resident receives upon arrival, instructs that when a grievance is filed and is not resolved to the satisfaction of the resident, as in the case at bar, the

13

grievance will be forwarded to the Administrator for final resolution. (Defs.' App., Ex B.)   The fact that Plaintiff did not contact Rogers directly is not dispositive of whether she acted with deliberate indifference to Plaintiff's medical needs.

Second, Plaintiff does not allege a theory of respondeat superior. Whether such a claim may be maintained under § 1983 is not an issue that is properly before this Court, and need not be addressed.

Applying the standard for the Residents' Guide here, this Court finds that Defendant Rogers was the Administrator of the STU at the time of the acts and omissions alleged in Plaintiff's complaint and further finds that she may have had certain affirmative responsibilities regarding Plaintiff's written grievance. A reasonable jury could determine on these facts that Rogers was deliberately indifferent to Plaintiff's need for a cardiac catheterization. This Court finds that a genuine issue as to a material fact remains as to Defendant Roger's action. As a consequence, this Court must deny Defendants' motion for summary judgment regarding Plaintiff's claims against Defendant Rogers.

**B.    CMS**

Defendants further argue that neither Defendant Santiago nor Defendant Rogers acted with deliberate indifference and that Plaintiff's allegations are better asserted against CMS. Defendants argue that CMS treated Plaintiff during all relevant time periods, thus demonstrating that Plaintiff had access to medical care and undermining any allegation of deliberate indifference. Moreover, Defendants contend that, "[o]n September 24, 2002, Santiago responded to Plaintiff, and because the Resident Grievance Form only referred to medical issues,

14

Santiago referred the matter to medical as indicated on the top right corner of the Resident

Grievance Form." (Santiago Aff. Ex. C.) Defendants contend that by forwarding the grievance

form "to medical," Defendant Santiago and Defendant Rogers fulfilled their obligations to assist

Plaintiff in obtaining access to proper medical care.

Defendant's argument seeks to delegate responsibility to provide access to necessary

medical procedures to CMS. However, "[c]ontracting out prison medical care does not relieve

the State of its constitutional duty to provide adequate medical treatment to those in its custody . .

. ." West v. Atkins, 487 U.S. 42, 56 (1988) While the record demonstrates Plaintiff had some

access to medical care during the relevant time periods, Plaintiff does not allege that he had no

access to medical care. Rather, Plaintiff contends that he was denied access to a cardiac

catheterization, a medical diagnosis that remains unchallenged. Further, Plaintiff alleges that

Defendant Santiago was personally aware of Dr. Jeferi's order for a cardiac catheterization and

acted with deliberate indifference by not responding to Plaintiff and his attorney's inquiries.

Defendants rely heavily on Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993), in which

the Ciruit held that where a detainee is under the care of medical professionals, prison employees

did not act with deliberate indifference when they did not respond to medical requests. The

instant case, however, is not analogous to Durmer. In Durmer, at the time the plaintiff was

complaining to prison staff, the medical necessity of the plaintiff's request for physical therapy

was a vigorously contested issue. Therefore, the Circuit found that prison employees were not

qualified to resolve the question. Durmer, 991 F.2d at 68-69. In the instant case, however,

Plaintiff complained and requested an investigation regarding the delay in his procedure ordered

15

by Dr. Jeferi.  Dr. Jeferi's order, which remains unchallenged by Defendants and on which Defendants present no contrary medical opinion, is not in dispute.

This Court finds that by forwarding the grievance sheet "to medical," Defendants may not have overcome their burden to demonstrate that they showed the requisite level of care and that Plaintiff had reasonable access to obtain the procedure.  Plaintiff has thus raised genuine issues of material fact as to whether Defendants Rogers and Santiago acted with deliberate indifference to his need for a cardiac catheterization.

## CONCLUSION

Plaintiff has raised genuine issues of material fact as to whether his medical condition is a serious illness. Plaintiff has further raised genuine issues of material fact as to whether Defendants Rogers and Santiago acted with deliberate indifference. Based on the consideration of these fact issues, this Court denies Defendants' motions seeking summary judgment in toto. Further, Plaintiff's Rule 56(f) motion provides a separate basis for denying Defendants' motions.

Dated:  August 18, 2005

        S/Joseph A. Greenaway, Jr.        
        JOSEPH A. GREENAWAY, JR., U.S.D.J.

16